Good morning. Good morning. I'm David Shelton and I represent the appellate Noelle Major. I appreciated this morning, I appreciated the opportunity to be here and I appreciated the breadth of the matters heard by this court until the argument before this one which also related to juice and no cigarette. So here we are again with at least some subject matter familiarity for figuring out... Yes, thank you for the invitation to Vermont's attorney to stay and listen. So we have a little bit of a different situation here. Your Honor, we're here appealing the district court's grant of summary judgment to defendant Ocean Spray Cranberries and against my client Noelle Major. It is a class action. It does relate to the food labeling of juice. It does relate to violations of the CFAR regulations pertaining to food labeling. However, we did not, this is summary judgment, we did not get to those issues that this court has been faced with regarding the calculation of damages or class search. So we're not to that point. So that being said, Your Honor, I'm mindful of the court's guidelines relating to oral argument and I strive to reserve a couple minutes for rebuttal. I'll just briefly background. My client is Noelle Major. Mrs. Major is a mother of two children. She did grocery shopping for her family like most mothers do, like many mothers do. And the specific item that she purchased that is at issue today is Ocean Spray's 100% juice in the cranberry and pomegranate flavor. And unlike the case that Your Honor has just heard, what this is is a juice product identified as 100% juice, cranberry and pomegranate flavor, labeled no sugar added. But it's much more than cranberry and pomegranate. And indeed, the ingredient lists identify the ingredients in the drink. And they are identified as various juices from concentrate, grape juice from concentrate. I won't say that every time, but it's grape, apple, plum, cranberry, and pomegranate in that order. One of the regulations that is at issue requires Ocean Spray, under the circumstances of this product, but I'll keep this in dispute, to include a statement on the front of the label. Some of us refer to that as a disclaimer. Sometimes courts refer to it as a statement or a disclaimer directing the consumer's attention to the back of the label. And basically the purpose of that is we're telling you that this product is no sugar added. However, you need to look on the back for two things, the calorie content and the sugar content. I don't think there's any dispute that Ocean Spray did not include that disclaimer during the class period. And as of the time that the suit was filed, after we filed the suit, Ocean Spray did include that disclaimer. The calorie content and what else? Sugar content. So was that part of the complaint in the district court, the calorie failure to include on the back of the label, the calorie content and the sugar content? Yes, Your Honor. And then the summary judgment arguments, were the summary judgment arguments, was that specific argument raised in the district court regarding the back of the label? I'm understanding your question, Your Honor. Are you asking for where did the parties brief? In terms of the summary judgment. Did the district court rule on that? Yes. Well, Your Honor, what the district court did was sort of unilaterally restricted the plaintiff's theory of the case. In his order granting summary judgment, the first part of it related to this disclaimer for this statement. What the district court found was that the plaintiff's own testimony undid her claim. But the plaintiff's testimony that she did not expect this product to be low calorie just results in her completely losing this point. And she cannot, therefore, cannot prove her lies. And so there are a couple points I can address. So what is your question, Your Honor? I'm looking at the order granting the motion for a process summary judgment. Excuse me. And it says the amended complaint states that the plaintiff purchased O'Shea Sprank juice and drinks that were allegedly unlawfully labeled no sugar added. The amended complaint going to page 2 also states that she purchased products with the following labels. Your Honor, so where is the district court address? Yo, you do need to call your permission on the back. Okay. Well, yeah. We miscommunicated. It's not that the district court, I don't think any of us will say, or the district court said that O'Shea Sprank failed to include information on the back. The disclaimer statement is actually supposed to be on the front directing the consumer's attention to the back. Okay. So where is the allegation made that O'Shea Sprank failed to direct the consumer's attention to the back for information? Okay. It doesn't appear to be part of the background facts that the district court made. Well, it's certainly in the complaint. You're asking where it is in the complaint, Your Honor? Well, I asked if the district court signed it. Okay. I'm looking at the predicate for the district court's decision, and I don't see that O'Shea Sprank. Well, respectfully to the district court, Your Honor, I'm not sure when he talks about a 101.60C2 disclaimer. So I'm looking at ER0007. That's what he's referring to, that. The 101.60C2 disclaimer is what he's referring to, what I'm talking about. It's not a thorough decision, but that's the disclaimer. Your Honor? What was the problem with that? When was it on the label? What wasn't on the label? Your Honor, 101.60. 101.60 is a regulation regulating user content claims, okay? And 101.60C is specific to sugar. So if a manufacturer or product wants to claim that its product has, quote, no sugar added. No, I understand that part. I didn't understand about looking around to look at it. I'm getting there. In order to make that statement, you have to have five conditions have to apply, all five of them, in order for a manufacturer to make that statement. And the fifth of five says that the product must bear a statement that the food is not low-calorie or calorie-reduced, if it meets certain criteria which are present here, and that directs consumers' attention. This is the part I think your Honors are asking about. And that directs consumers' attention to the nutrition panel, typically that's on the side or the back, for further information on sugar content and calorie content. That's the... I thought the district court ruled that in order for the plaintiff to prevail on her theory of mislabeling under that regulation, she must have relied on the no sugar added message to mean that the 100C products were low-calorie or low-calorie. That is what he ruled. And that is error. It's error because, for a couple of reasons. One is that Ms. Major alleged that no sugar added was not deceptive to her. She testified that she was concerned about the sugar content of the foods consumed by her children. She tended to buy the product for her children because it seemed like it was healthier. And she was drawn to the product, and this is in response to counsel's questions at the deposition, she was drawn to the product by the label that claimed no sugar added. She relied on the no sugar added claim on the label, and the label claim motivated her decision to purchase the product. I should know sugar added. It was 100C. And did she read the book to see how much sugar there was? No. What she testified is that there was no sugar. The label says no sugar added. And what she thought that meant was that there was no sugar or no ingredient of any type added to the product. I'm summarizing. I'm just going to get to that point in a moment. What this is designed for, what we really have here, if you really want to get into the facts of this product, is that it's cranberry and pomegranate marketed juice with no sugar added. In reality, and this is not disputed, the defendants on that spurt testified to this, Ocean Spray added these other juices that are sweet, grape juice, apple juice, plum juice. But Ocean Spray says that there is nothing. Those juices also contain whatever sugar they contain naturally. So even if those juices aren't in there, there's no sugar added to the juices that are joined with the cranberry juice. What's your response to that? Well, Your Honor, the CFR really, the Code of Federal Regulations here, and the expert declaration that we submitted, that that does not matter. It's fine. It's fine to make a product like this and add in these juices. They're sweetened. It's not fine to label it as no sugar added, because the regulation says it's not. Yes. The cranberry and the pomegranate are the juices featured on the front of the label of the product. Okay? And the defendants even admit that those two juices are tart, astringent. People won't like it. People won't buy it. And to make a juice like that, in fact, those two juices are more expensive, and so the other juices are cheaper and sweeter. And how is that adding sugar? If the juice, if the fruits that are used to sweeten the pomegranate juice are naturally sweet without any sugar being added to them, how is that adding sugar? Your Honor, the CFR says that the manufacturer of a product, and listen, one thing here is, I want the court to understand, a manufacturer is not allowed to say no added sugar if they don't add sugar. That's not the only thing. You can't add things that function as sugar substitutes. Well, I'm going to get to that soon. Concentrated fruit juices are opposed to what I call reconstituted fruit juice from concentrated concentrate. Right. And, Your Honor, I mean, that can certainly be debated. That is not a summary judgment type issue as a result. Well, this is an alternative issue of facts-raising, and on this record it's questionable whether the expert would apply it to a phrase of material use. And you can write a detailed explanation given by the representative from Ocean Spray regarding how these juices are reconstituted and the formula that's used. Right. Well, two points on that quickly. First of all, the district court erred in incorrectly paraphrasing what this regulation is. The regulation prohibits no sugar added when the product, picture the juice in a jug, when the product includes an ingredient containing concentrated fruit juice. Okay. Okay. And the district court said that you can't use no sugar added message on the label of food containing added sugars, such as jam, jelly, or concentrated foods. It's a subtle difference, but if you read what the district court said and what the regulation said, there's a difference. And I will, before I sit down, I want to say this. The district court took every fact here and took the circuit and viewed the evidence in the light most favorable to the moving party, and this is an example of it, and there are others. But to address the court's issue on the expert, Ben Scarborough, a former director of foods labeling at the FDA, simply noted a higher declaration. The district court certainly was aware of it and noted it in footnote four. The court concluded, the district court concluded, and I contend this is error, that the declaration did not directly address the distinction between fruit juice from concentrate and fruit juice concentrate. And, therefore, it was not enough to raise the fact that Dr. Scarborough didn't address it directly because it's a distinction without a difference. And he talked about, he talked, he analyzed Ms. Hoffman's affidavit for motion to pray and described, or I've described to you about how this is done. The product has an ingredient that contains concentrated fruit juice. It's in there, and this label violates 101.60, and no sugar added can be on a product of this type, and the product is not correctly labeled in accordance with FDA regulations. Thank you, Your Honor. Good morning, Your Honor. This is the Court of Briggs-Shackle, 4-3 Briggs Hourly, representing Oceanspring Cranberries. This court has had panels that have seen a number of appeals, from the so-called food court here in the Northern District, and many of these cases have raised some exotic issues about Rule 23. You've heard some of those this morning. They've also raised some highly technical issues trying to make sense of very complicated rules and regulations that apply to the labeling of food. This is not one of those cases. This is an appeal from a summary judgment. It's a garden variety case, and the summary judgment was entered against the plaintiff for two reasons. First, her legal theory was fundamentally flawed, because it was based upon a flawed reading of the regulation pertaining to 100% juices that are truthfully labeled as no sugar added, and what we're talking about is a blend of different 100% juices. It doesn't matter how many there are. It doesn't matter what the functions are. It seems to play the flavor profile, but as long as what you have is 1, 2, 3, 5, it doesn't matter. 100% juices made from concentrate blended together is still a 100% juice blend with no sugar added. I just find this quote rather mystifying. When you use concentrate juices, you add water, don't you? Yes, Your Honor. So you're not adding sugar by adding the water. That's correct. Now, if you label something 100% cranberry and pomegranate juice, and it also includes that it's made from concentrated cranberry and pomegranate juice and you add water, but then you also have apple juice and pineapple juice in there, concentrate that you're adding water to, the label 100% pomegranate and cranberry juice is deceptive or false, isn't it? It would be. Is that what this is about? It's not. Your Honor has described eight different products, and the label that's at issue in this case, among other places, it's in the amended complaint. You can find it at excerpts of record pages 791 and 792. This is not about a 100% cranberry and pomegranate juice. That's a different product. This is about a 100% juice blend. It's cranberry and pomegranate flavored because those are the characterizing flavors of the overall blend. However, the other juices in the blend are as identified in the ingredient statement, and they are all fully reconstituted. And I appreciate in this day and age my example is getting a little dated, but I do think it works. I remember when I used to live in Massachusetts, we didn't have the benefit of fresh citrus the way we do in California or Florida. And so we would buy the cans of frozen concentrated orange juice. And what that would tell you is it would say, take the contents of the can and add two cans of water. Three. Mix them together, and what do you have? You have 100% orange juice from concentrate with no added sugar, because merely putting the water in can't add any sugar. The only sugar that was there is what existed in the concentrate. And when you fully dilute it, what you have under the federal, the FDA's regulations, standard of identity, is 100% orange juice from concentrate. Now, the same thing applies no matter how many juices you blend together, as long as you add in enough water to reconstitute each of the concentrates. Well, any form of sugar. It doesn't matter. What happens is when you dilute, when you evaporate the water out from the fresh fruit, you leave in the sugar solids and all of the other things that were there in the fruit, the water's gone. So then when you put the water back in, you've got 100% juice from concentrate. So the product that we had here had five different juices in it. It had some cranberry juice from concentrate. It had pomegranate juice from concentrate. It had grape juice from concentrate. And the others, those were all blended in. But what the undisputed facts of the record showed, this is why we put an issue, the declaration from Ms. Kaufman, is she's the food scientist who developed this product. And she told us exactly how it's made. She says, you start with the base, and then you know from the formula how much water you have to add back in total in order to reconstitute each of the juices in the blend to its single strength. That's how the product is made. Those facts are in the record. Those are undisputed. Now, what the appellate has relied on is a declaration from Mr. Scarborough. And the interesting things about Mr. Scarborough in this case is that he never looked at the formula. He has no evidence for how this product is made. He has suppositions. He offers opinions based upon his time at the FDA. But what happened was the plaintiff never even asked in discovery for the formulas. She didn't care because her theory is that if a product is made with ingredients that ever were deconcentrated, it's disabled to bear a no sugar added claim. That's wrong. It confuses the distinction between juice concentrate and fruit juice from concentrate. They litigated the case about one kind of product. What she bought was something different. What she bought was exactly what the label says, a blend of juices made from concentrate diluted to their appropriate and prospective BRX levels with no sugar added. So the product was legally allowed to bear the no sugar added claim. Now, what she gets to and what Your Honor has talked about, and this is where the facts also sort of got in her way, was with respect to the disclaimer. Because the disclaimer says, see interest in facts panel for information about calories and It says, not a low calorie food. See nutrition facts panel for information about calories and sugar. And so her claim was that because it didn't have the disclaimer, this label confused me. I was deceived by it. So I asked her point blank in her deposition, did you believe this product was a low calorie food? No. So she wasn't confused about the label at all with respect to the no calorie issue. The disclaimer would have added nothing to her because she wasn't confused by it. Second, the disclaimer says, look at the back above sugar. So we asked her about sugar. What did you understand where the sugar came from? It came from the fruit, no other place. Well, that's true. So she can't rely to her detriment and bring a lawsuit on the basis of a label that she completely understood and which was factually correct. When did you put on a label that it's not a low calorie product? With respect to this, and this is one of the things that I believe Judge Schroeder, you asked Mr. Schultz as well. What the district court held is that it was arguable whether it was required to be there or not. This applet didn't decide the legal issue, whether or not the disclaimer was required to be there or not. So that's really not an issue that's before the court to decide. As a factual matter, there is debate in the industry whether the regulation 101, it's 21 CFR 101.60 C2 would apply to juices in these circumstances. Formally, the industry practice was that. That's the one that talks about the no sugar added, and then the question is, does the disclaimer have to be on products that are 100% juice? The convention in the industry previously was that no one put it on there. The convention in the industry now is that everyone has it. I don't think anyone's conceded whether it's legally required or not. Add something to the label. What is the? An asterisk that says no sugar added. And so it adds the disclaimer. So whether the disclaimer is legally required or not, not a low-calorie food level, see Nutrition Facts Panel for information about calories and sugar. And so whether that's legally required or not was not an issue that the court decided. It was an article, a factual issue. But what it really got into is, in the circumstances here, was the absence of that disclaimer, did that cause the plaintiff to be deceived or misled about what it was she was buying? And on the basis of her own testimony, he found no, it didn't because she didn't buy it thinking it was a low-calorie food. And she bought it thinking however much sugar there is in it, it came from the fruit. And we established on the basis of a disputed fact that it is true. So what you're really getting left with once her admissions and deposition are resolved is, is there a theory for strict liability based upon some technical labeling violation? In other words, if she's not deceived, she's not misled and the statements are true, you don't have a claim under the deceptive prong or the misstating prong of California's unfair competition clause. You don't have a false advertising claim because the statement is true. So what you get is a sort of strict liability theory that says, assuming that that was required to be there, all I have to do is say it was not and I go directly, pass, go and collect my $200. That notion, the court rejected, it's been rejected by another panel of this court in an unpublished decision that you're probably all aware of in the Brazil against Dole case. And the part that's important about that simply is, in addition to what they call theory outlandish, is that they said that there's no California law that supports this idea of that would strip away the specific elements that have to be proven under the unfair competition law and create this as a strict liability statute. You know, I spend a lot of time in supermarkets and there are juices, cranberry juices, that are labeled reduced calorie or a little bit like low calorie. What are those? What do they do to those? To begin with, they're not 100% juice products. They're going to be a juice blend. And one of Ocean Spray's flagship products is its cranberry juice cocktail. That product has 25%. Well, it's actually less than that. It's, it's between, it's, it's varied over the years, but 15 and 22% cranberry juice. And that's something that has to be disclosed on the label. When you have a juice cocktail or a juice blend, that's less than a hundred percent. You don't otherwise disclose it when it's a hundred percent juice because that's what you're selling. A hundred percent juice. Now, to answer your question, Judge Broder, is that when you reduce the amount of juice in it, there's less sugar than there would be if it were a hundred percent. And then sometimes in order to change the flavor profile, they'll add a different kind of sweetener, usually a reduced or a non-caloric sweetener. And that's what allows this sort of juice bite, if you will. And sometimes there are a number of options. So they use artificial sweetener to less juice and more water. That's correct. And the less juice and more water are sort of two sides of the same coin. So you have less than a hundred percent juice. So by definition, you have more water or something else in it. In this case, it's water. And then we have another line of products that are light or diet. So some are reduced calorie, some are zero calorie. And so then all these sweeteners would come from some non-caloric form. But again, those are different products. A hundred percent juice product is made entirely of reconstituted juices from concentrate. It does not contain fruit juice concentrate. It contains juice from concentrate. And for that reason, it bears the truthful and accurate label of sugar added. Well, it sort of does contain concentrate, but it's not in the concentrate. I mean, if you start with the concentrated and water, you're good. In fairness, Your Honor, so to try to be as descriptive to consumers as possible, again, this is at excerpts of record, page 790. What the label does is it will say grape juice from concentrate, perin, water, grape juice concentrate, to let people know it's been fully reconstituted, but it did start out. So it doesn't, in the finished product, have the concentrated fruit juice. Thank you. Thank you. I just got to go through, so I'll reference the dull decision, that is the decision that actually refers to summary judgment from the district court. Your Honor, I would suggest, with respect to that, it goes a lot less back and forth in that case than it does here and here. Also, even if the concentrate, issue, the juice from concentrate, or concentrated fruit juice, set that aside for a moment. The first basis for the district court's grant of summary judgment related, he concluded that she did not rely on the claim. And so, to me, that's just a, there's just no way to reach that conclusion unless you do what the district court did, which was, which was make the only acceptable form, the only acceptable form of her life, that the district court was willing to accept from this measure. So, you had to rely on that, and it had everything to do with calories. And she justified that she bought diet drinks for herself, but for her kids, it was all about sugar. So, Your Honor, with that being said, we have that submitted at the district court level. We respectfully request remand, that there are material issues of effect. Thank you. Thank you, counsel. Thank you to both counsel. Case disbarred. He is subpoenaed for seizure of court and will be in recess for two minutes.
judges: Schroeder, Rawlinson, Stafford